Hearing Date: **May 12, 2010 at 10:00 a.m. (ET)**
Objection Deadline: **May 5, 2010 at 4:00 p.m. (ET)**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball
Jayant W. Tambe
Aviva Warter Sisitsky

*Attorneys for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    Case No. 08-13555 (JMP)
                                                            :
          Debtors.                                          :    (Jointly Administered)
------------------------------------------------------------x
                                                            :
LEHMAN BROTHERS HOLDINGS INC. and        :
LEHMAN BROTHERS SPECIAL                         :
FINANCING, INC.                                        :    Adv. Proc. No. 10-03228-jmp
                                                            :
          Plaintiffs,                                       :
                                                            :
    -against-                                               :
                                                            :
NOMURA INTERNATIONAL PLC,                       :
                                                            :
          Defendant.                                        :
------------------------------------------------------------x
                                                            :
LEHMAN BROTHERS HOLDINGS INC. and        :
LEHMAN BROTHERS SPECIAL                         :
FINANCING, INC.                                        :    Adv. Proc. No. 10-03229-jmp
                                                            :
          Plaintiffs,                                       :
                                                            :
    -against-                                               :
                                                            :
NOMURA SECURITIES CO. LTD.                      :
                                                            :
          Defendant.                                        :
------------------------------------------------------------x

**NOTICE OF MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY
OF AN ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 1001, 7042 AND 9014, TO CONSOLIDATE
<u>CERTAIN PROCEEDINGS AND ESTABLISH RELATED PROCEDURES</u>**

**PLEASE TAKE NOTICE** that a hearing on the annexed Motion of Debtors and Debtors

in Possession for Entry of an Order, Pursuant to Section 105 of the Bankruptcy Code and

Bankruptcy Rules 1001, 7042 and 9014, to Consolidate Certain Proceedings and Establish

Related Procedures (the "<u>Motion</u>") will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy</u>

<u>Court</u>"), on **May 12, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "<u>Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in

writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the

Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, shall be filed with

the Bankruptcy Court electronically in accordance with General Order M-242 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document

Format (PDF), Microsoft Word, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Jayant W. Tambe,

Corinne Ball, and Aviva Warter Sisitsky) and Weil Gotshal & Manges LLP, 767 Fifth Avenue,

New York, New York 10153 (Attn:  Richard P. Krasnow, Lori R. Fife, Shai Y. Waisman, and

Jacqueline Marcus), attorneys for the Debtors; (iii) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004

(Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope

Davis); (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York,

New York 10005 (Attn:  Dennis F. Dunne, Dennis O'Donnell, and Evan Fleck), attorneys for the

official committee of unsecured creditors appointed in these cases; and (v) Shearman & Sterling

LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: Douglas P. Bartner and Solomon J.

Noh) and Allen & Overy LLP, One Bishops Square, London, E1 6AD, United Kingdom (Attn:

Paul Cluley), attorneys for Nomura, so as to be received no later than **May 5, 2010 at 4:00 p.m.**

(Prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:   New York, New York           Respectfully submitted,
         April 23, 2010


                                        _/s/ Jayant W. Tambe_____
                                        Jayant W. Tambe
                                        Corinne Ball
                                        Aviva Warter Sisitsky
                                        JONES DAY
                                        222 East 41st Street
                                        New York, New York  10017
                                        Telephone:  (212) 326-3939
                                        Facsimile:  (212) 755-7306

                                        ATTORNEYS FOR DEBTORS AND
                                        DEBTORS IN POSSESSION

**Hearing Date:  May 12, 2010 at 10:00 a.m. (ET)**
**Response Deadline: May 5, 2010 at 4:00 p.m. (ET)**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball
Jayant W. Tambe
Aviva Warter Sisitsky

*Attorneys for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re:                                                      :      Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      Case No. 08-13555 (JMP)
                                                            :
              Debtors.                                      :      (Jointly Administered)
------------------------------------------------------------x
                                                            :
LEHMAN BROTHERS HOLDINGS INC. and   :
LEHMAN BROTHERS SPECIAL                     :
FINANCING, INC.                                    :      Adv. Proc. No. 10-03228-jmp
                                                            :
              Plaintiffs,                                   :
                                                            :
      -against-                                             :
                                                            :
NOMURA INTERNATIONAL PLC,                    :
                                                            :
              Defendant.                                    :
------------------------------------------------------------x
                                                            :
LEHMAN BROTHERS HOLDINGS INC. and   :
LEHMAN BROTHERS SPECIAL                     :
FINANCING, INC.                                    :      Adv. Proc. No. 10-03229-jmp
                                                            :
              Plaintiffs,                                   :
                                                            :
      -against-                                             :
                                                            :
NOMURA SECURITIES CO. LTD.                   :
                                                            :
              Defendant.                                    :
------------------------------------------------------------x

**MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY
OF AN ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 1001, 7042 AND 9014, TO CONSOLIDATE
CERTAIN PROCEEDINGS AND ESTABLISH RELATED PROCEDURES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing

Inc. ("LBSF" and together with LBHI and their affiliated debtors in the above-referenced chapter

11 cases, the "Debtors"), as debtors and debtors in possession, hereby move to:  (1) consolidate

(a) an adversary complaint and objection relating to certain proofs of claim filed by Nomura

International plc ("Nomura") against LBSF and LBHI, (b) an adversary complaint and objection

relating to certain proofs of claim filed by Nomura Securities Co. Ltd. ("Nomura Securities")

against LBSF and LBHI, and (c) an objection  to certain proofs of claim filed by Nomura Global

Financial Products, Inc. ("Nomura GFP" and together with Nomura and Nomura Securities, the

"Nomura Entities") filed against LBSF and LBHI (collectively, the "Nomura Proceedings"); and

(2) establish related procedures.  In support of this Motion, the Debtors respectfully state as

follows:

**PRELIMINARY STATEMENT**

1.      The Nomura Proceedings seek redress against the Nomura Entities for their

egregious inflation by, in some cases, hundreds of millions of dollars of the proofs of claim that

the Nomura Entities filed under penalty of perjury.[1]  The Nomura Entities' claims have no basis

in law or in the parties' agreements.  Those claims are premised on purported valuations and

---

[1]     References to proofs of claim include the facts set forth by the Nomura Entities in their respective
Derivatives Questionnaire.  Pursuant to the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code
and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form
and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271], each Nomura
Entity electronically uploaded supporting documentation on the website (http://www.lehman-claims.com),
as required in the Derivative Questionnaire, including the documents referenced herein.

calculations that are commercially unreasonable, divorced from economic reality, and bear no relation to any actual damages or losses suffered by the Nomura Entities. Indeed, based solely on the facts set forth in the Nomura Entities' claims, neither Nomura nor Nomura Securities is entitled to a single cent from the Debtors, but instead it is those two entities that owe the Debtors tens of millions of dollars. Similarly, while Nomura GFP may ultimately be entitled to claims against the Debtors, such claims should, if anything, be only a fraction of the amounts that Nomura GFP claims it is owed.

2.     The Nomura Entities' proofs of claim, numbers 17198, 17199, 17202, 17203, 17204 and 17205 (collectively, the "Claims") demand, in the aggregate, over $1 billion from each of LBSF and LBHI under three separate ISDA Master Agreements between LBSF and each Nomura Entity, and with respect to which LBHI was the Credit Support Provider (collectively, the "Master Agreements" and together with the applicable Schedules thereto and various Confirmations entered into thereunder, the "Swap Agreements").[2]

3.     Each Swap Agreement provided for Automatic Early Termination of the agreement upon the occurrence of a "Bankruptcy" Event of Default (the "Bankruptcy Event of Default").[3] That Event of Default occurred no later than the bankruptcy filing of LBHI, LBSF's Credit Support Provider, at approximately 2 a.m., Eastern Daylight Time, on September 15, 2008

---

[2]     Specifically, on September 18, 2009, (a) Nomura filed Claim Nos. 17198 and 17199 in the amount of $722,417,697.70 against LBSF and LBHI, respectively, arising under an ISDA Master Agreement, dated as of October 16, 1992 with LBSF, and LBHI in its capacity as credit support provider, (b) Nomura Securities filed Claim Nos. 17203 and 17202 in the amount of $40,037,852.15 against LBSF and LBHI, respectively, arising under an ISDA Master Agreement, dated as of September 21, 2000 with LBSF, and LBHI in its capacity as credit support provider and (c) Nomura GFP filed Claim Nos. 17205 and 17204 in the amount of $241,360,068 against LBSF and LBHI, respectively, arising under an ISDA Master Agreement, dated as of November 1, 2001 with LBSF, and LBHI in its capacity as credit support provider.

[3]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Master Agreements, referenced above, or the Credit Support Annexes entered into between LBSF and each Nomura Entity, respectively, and which supplements and forms part of, and is subject to, the Master Agreement (the "CSA").

(the "Termination Date"), and may actually have occurred even earlier. Pursuant to the plain terms of each of the Swap Agreements, each of the Nomura Entities was required to calculate the Settlement Amount owed upon the Early Termination of the Swap Agreement, as of the date and time of the termination. In each of the Swap Agreements, the parties expressly agreed that if the Settlement Amount calculation yielded a negative number, *i.e.* a Nomura Entity had gained as a result of the termination, then the Nomura Entity would be required to pay that gain to LBSF, notwithstanding that LBSF was the Defaulting Party under the contract.

4.    Just prior to termination of each Swap Agreement, each Nomura Entity had calculated the value for its respective Swap Agreement as significantly in favor of LBSF (the "Exposure")—approximately $248 million by Nomura, $90 million by Nomura Securities and $146 million by Nomura GFP. As required by each of the Swap Agreements, each Nomura Entity transferred credit support to the Debtors in recognition of this Exposure.

5.    Notwithstanding each Nomura Entity's own Exposure calculation in favor of the Debtors, each Nomura Entity delivered a Calculation Statement on September 30, 2008 (collectively, the "September 2008 Calculation Statements") purporting to calculate its Loss (as of either September 15, 2008 in the case of Nomura GFP or September 16, 2008 in the case of Nomura and Nomura Securities) and setting forth a Settlement Amount calculation of $172 million and $87 million due and owed by LBSF to Nomura and Nomura GFP, respectively and $42 million due and owed by Nomura Securities to LBSF. These calculations presented an aggregate swing of over $700 million in the Nomura Entities' favor from the calculation of their respective Exposures just days earlier.

6.      Each Swap Agreement required the Nomura Entities to calculate their respective Settlement Amounts on the basis of market quotations obtained from multiple independent dealers.

7.      Each of the Nomura Entities acknowledged that it could not obtain any such quotes, and each admitted that it resorted to the alternative Loss method of calculating the Settlement Amount.  Under the Swap Agreements' definition of the Loss method of calculation, each Nomura Entity's Settlement Amount calculation was limited to actual contract damages, namely, the benefit of the bargain or costs actually incurred as a result of the early termination.

8.      Each Nomura Entity delivered to LBSF a September 2008 Calculation Statement in which each had calculated all or a portion of its Loss by using its own "internal models" to derive values for thousands of transactions entered into under the Swap Agreements and applying a "bid/offer spread" to pairs of offsetting and overlapping transactions.  As described below, each Nomura Entity arbitrarily manufactured a significant portion of its claims by applying that "bid/offer spread" to offsetting positions that posed zero economic risk to the Nomura Entities.

9.      Apparently not content with the claim inflation described above, Nomura sought to further inflate its claims by $270 million more based on events facts and circumstances that occurred after its Swap Agreement was terminated.  More specifically, on February 13, 2009, Nomura delivered to LBSF a second Calculation Statement in which it claimed an even larger Settlement Amount—$443,978,774.00 (the "February 2009 Calculation Statement").  Nomura's further inflation of the Settlement Amount by approximately $270 million stemmed entirely from a revised claim by Nomura for credit protection payments under ten Transactions with respect to certain Icelandic banks that experienced defaults in November 2008—two months after the Swap

Agreement had automatically terminated.  There was no legal, factual or other basis for
Nomura's inclusion in its February 2009 Calculation Statement of these further inflated claims or
amounts.[4]  The February 2009 Calculation Statement formed the basis of the Claims filed by
Nomura on September 18, 2009.  The September 2008 Calculation Statements for Nomura
Securities and Nomura GFP form the basis of the Claims filed by Nomura Securities and
Nomura GFP on September 18, 2009.

       10.     The egregious inflation summarized above and detailed below is nothing more
than an attempt by the Nomura Entities to wrongfully extract hundreds of millions of dollars
from the Debtors to the direct detriment of the Debtors' estates and creditors.  The table below
shows the swing in values between the parties' Exposure calculations before the Termination
Date and the Settlement Amounts the Nomura Entities calculated after the Termination Date, as
well as the amounts claimed by the Nomura Entities, which have imbedded within them
unmatured interest and improper legal fees, as reflected in their sworn Claims:

---

[4]     To be sure, LBHI and LBSF in no way concede the accuracy of Nomura's September 2008 calculation of
amounts allegedly owed with respect to these Icelandic Bank transactions.  The original calculation is also
inflated and widely in excess of an appropriate valuation.

|  | Exposure To Debtors Before Termination[5] | Purported Settlement Amount After Termination | Swing From Exposure To Purported Settlement Amount | Proof of Claim Amount[6] | Approximate Number of Transactions |
|---|---|---|---|---|---|
| Nomura (9/30/08 Calculation Statement) | $248,025,000.00 | ($172,803,687.00) | ($420,828,687.00) | superseded, see below | 2464 |
| Nomura (2/13/09 Calculation Statement)[7] | $248,025,000.00 | ($443,978,774.00) | ($692,003,774.00) | ($722,417,697.70) | 2464 |
| Nomura Securities | $90,105,636.41[8] | $42,855,723.98 | ($47,249,912.43) | ($40,037,852.15) | 726 |
| Nomura GFP | $146,230,000.00 | ($87,273,682.00) | ($233,503,682.00) | ($241,360,068.00) | 1178 |

11.     Because (a) the flawed Loss calculation methodology described above was

employed by each of the Nomura Entities in calculating the Settlement Amount under its

respective Swap Agreement (all of which contain identical language), and (b) each of the Claims

---

[5]     The numbers in parentheses depict amounts the Nomura Entities claim, based on their filings with this Court, that they are owed by the Debtors.

[6]     The amounts that the Nomura Entities submitted in their respective proofs of claim include the credit support each Nomura Entity delivered to LBSF before termination of the Settlement Amounts the Nomura Entities calculated, and amounts for unmatured interest and improper legal fees.

[7]     As previously noted, in addition to the flawed Loss calculation methodologies that the Nomura Entities employ across all of the Transactions under their respective Swap Agreements with the Debtors, Nomura, in particular, has also sought, without any legitimate basis, to inflate its claims against the Debtors by including amounts on account of 10 credit default swap Transactions relating to Icelandic banks, which failed *after* termination.  Though this precise form of claim inflation, namely, submitting claims on account of *expired transactions*, is unique to Nomura, common issues of fact and law exist among the three Nomura Entities' Claims, and the fact that Nomura has additional issues with respect to its claim should not defeat consolidation under Bankruptcy Rule 7042.

[8]     The $90 million Exposure consists of $80 million of credit support delivered by Nomura Securities to LBSF plus a $10 million Threshold Amount.  Paragraph 11(b)(iii)(B)(1) of the Nomura Securities' CSA provides that Nomura Securities was required to deliver credit support to LBSF once a "Threshold Amount" has been met.  Paragraph 11(b)(iii)(B)(1) assigned a predetermined and agreed upon "Threshold Amount," which was calculated by reference to the then-applicable rating of the "senior unsecured debt of Nomura Securities Ltd."—$10 million.

is improperly asserting claims for unmatured interest and legal fees, the three proceedings will involve significant common questions of law and fact. Accordingly, the Debtors respectfully request that, in the interests of judicial economy, efficiency and fairness, the three proceedings be consolidated.[9]

## BACKGROUND

12.     On September 15, 2008 and October 3, 2008, LBHI and LBSF, respectively, commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. LBSF's chapter 11 case has been consolidated with LBHI's chapter 11 case for procedural purposes only, and those cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). LBHI's and LBSF's principal place of business is located at 1271 Sixth Avenue, New York, New York 10020 and each is authorized to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the title 11 of the United States Code (the "Bankruptcy Code").

13.     On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

---

[9]     In addition to filing proofs of claim against the Debtors, on February 27, 2009, Nomura GFP filed an adversary complaint LBSF and Lehman Brothers Inc., styled Nomura Global Financial Products, Inc. v. Lehman Brothers Special Financing Inc., et al., 09-01061 (Bankr. S.D.N.Y. Feb. 27, 2009) (the "Nomura GFP Litigation"). In the Nomura GFP Litigation, Nomura GFP seeks recovery on account of allegedly erroneous payments transferred by Nomura GFP to LBSF on September 15, 2008, through LBSF's clearing agent, Lehman Brothers Inc. On April 3, 2009, both LBSF and Lehman Brothers Inc. filed an answer, and LBSF filed a counterclaim against Nomura GFP, seeking a declaratory judgment confirming and enforcing Nomura GFP's payment under the terms of the 1992 ISDA Master Agreement. The Nomura GFP Litigation is currently pending before this Court. The Nomura GFP Proceeding is not part of this Motion.

**RELIEF REQUESTED**

14.     Pursuant to Bankruptcy Rules 1001, 7042 and 9014, the Debtors seek to

consolidate the Nomura Proceedings, namely:  (i) the adversary proceeding and objection, styled

Lehman Brother Special Financing, Inc. v. Nomura International plc, Adv No. 10-03228-jmp

(the "Nomura International Proceeding"), (ii) the adversary proceeding and objection, styled

Lehman Brother Special Financing, Inc. v. Nomura Securities Co. Ltd., Adv No. 10-03229-jmp

(the "Nomura Securities Proceeding"), and (iii) the contested matter instituted by that Objection

of Debtors and Debtors In Possession to Claims of Nomura Global Financial Products, Inc., Case

No. 08-13555 (JMP) (Docket No. 8612) (the "Nomura GFP Proceeding").[10]

15.     The Debtors seek, as part of such consolidation, entry of an order, substantially in

the form attached hereto as Exhibit A, providing:  (a) all documents filed in connection with any

of the Nomura Proceedings shall be filed only on the docket of the main chapter 11 case, In re

Lehman Brothers Holdings Inc., et al., Case No. 08-13855 (JMP), (b) all documents filed in

connection with any of the Nomura Proceedings shall be captioned as set forth on Annex A to

the proposed order attached hereto as Exhibit A, (c) all hearings (whether evidentiary or non-

evidentiary), trials and conferences (whether pre-trial or otherwise) held with respect to any

Nomura Proceeding shall be treated as a joint hearing, trial or conference on all Nomura

Proceedings, (d) the Nomura Proceedings shall be exempt from the Order Pursuant to Section

105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the

Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution

Procedures for Claims Against Debtors [Docket No. 8474], (e) notwithstanding that the Nomura

GFP Proceeding is a contested matter, and notwithstanding that the Nomura International

---

[10]     Through this Motion, the Debtors are not seeking to consolidate the Nomura GFP Litigation, as that
proceeding does not involve issues that are common to the Nomura Proceedings identified above.

Proceeding and the Nomura Securities Proceeding contain contested matters, both the Debtors

and Nomura shall serve all documents filed in the Nomura Proceedings in a manner consistent

with the timelines, applicable rules and procedures governing adversary proceedings, and (f)

consistent with the requirements of Bankruptcy Rules 7016, 7026(f) and 9014, the Debtors and

the Nomura Entities are hereby directed to confer, as soon as practicable, with respect to the

submission of a jointly-proposed scheduling order and discovery plan with respect to the

Nomura Proceedings, which will facilitate the consolidation of the Nomura Proceedings.

## **BASIS FOR RELIEF REQUESTED**

16.     Rule 42 of the Federal Rules of Civil Procedure, made applicable to adversary

proceedings and contested matters pursuant to Bankruptcy Rule 7042 and 9014, respectively,

provides, in relevant part:

> If actions before the court involve a common question of law or
> fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

17.     Rule 42 "allows the court to make such orders for a joint hearing or trial or

consolidation as may tend to avoid unnecessary costs or delay; the power given the court is

discretionary and the exercise of such power may be reviewed on appeal from a final judgment

or order but will not be disturbed except for abuse of discretion."  Matter of Dak Mfg. Corp., 73

B.R. 917, 922 (Bankr. D.N.J. 1987) (citations omitted) (citing 2 J. Moore, A. Vestal, P. Kurland,

Moore's Federal Practice and Procedure, § 20.01 (6th ed. 1986)).  "Moreover, the fact that

additional issues may be involved in either action, should not operate to defeat a consolidation

under" Rule 42. Id.

18.     This Court has broad discretion to consolidate the Nomura Proceedings.  See

Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990).  When exercising this broad

discretion, courts consider:  "whether the specific risks of prejudice and possible confusion [are]

overborne by the risk of inconsistent adjudications of common factual and legal issues, the

burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the

length of time required to conclude multiple suits as against a single one, and the relative

expense to all concerned of the single-trial, multiple-trial alternatives."  Id. at 1285 (citations and

quotations omitted; alterations in original).

19.     In bankruptcy proceedings, both contested matters and adversary proceedings are

routinely consolidated.  See, e.g., In re Parr, 165 B.R. 677, 680 (Bankr. N.D. Ala. 1993)

(contested matters; consolidating claim objections of unrelated parties where proceedings

involved common material facts and identical legal issues); Matter of Silver Mill Frozen Foods,

Inc., 23 B.R. 179, 185 (Bankr. W.D. Mich. 1982) (adversary proceedings; consolidating portions

of preference actions against unrelated preference defendants); see also Matter of Dak Mfg.

Corp., 73 B.R. 917, 922 (Bankr. D.N.J. 1987) (consolidating core adversary proceeding with

non-core adversary proceeding and noting consolidation did not change the nature of the court's

jurisdiction).

20.     Such consolidation is appropriate in this case due to the common thread tethering

the Nomura Proceedings, namely the egregious claim inflation resulting from, among other

things, charging a "bid/offer spread" across flat economic positions to manufacture hundreds of

millions of dollars in favor of the Nomura Entities, and to the detriment of the Debtors and their

creditors.

21.     Specifically, all of the Nomura Proceedings arise out of the filing by the Nomura

Entities of grossly inflated claims against LBSF and LBHI.  Two of the three claim calculations

are **so** egregiously inflated that the relevant Nomura Entities actually owe the Debtors tens of

millions of dollars on account of the terminated swap transactions, thereby giving rise to a right

of affirmative recovery by the Debtors.  Accordingly, with respect to Nomura and Nomura

Securities, the Debtors believe that, though styled as adversary proceedings, the proceedings are

more usefully conceptualized as claim objections with accompanying counterclaims for

affirmative relief.[11]  Moreover, as each of these claim objections (with accompanying claims for

affirmative relief by Nomura and Nomura Securities) turns on common issues of fact and law

described below, the Debtors believe that it would promote both fairness and efficiency to have

them heard together.

## ARGUMENT

### I.     The Relevant Provisions Of The Nomura Entities' Contracts With LBSF Are Identical

22.     The bankruptcy filing of LBHI, the Credit Support Provider under each Master

Agreement, constituted an Event of Default under Sections 5(a)(vii)(4) and (5).  Pursuant to

Section 5 of the Swap Agreement, both a formal resolution to file for bankruptcy and a

bankruptcy filing itself constituted an Event of Default.[12]

23.     The parties to each Master Agreement agreed that upon certain Events of Default,

"[t]he 'Automatic Early Termination' provisions of Section 6(a) will apply [. . . .]"

---

[11]     For the avoidance of doubt, the Debtors are not seeking to alter the applicable burdens of proof in any of the Nomura Proceedings or the Debtors' or the Nomura Entities' substantive rights in any way.

[12]     The LBHI Board of Directors met on September 14, 2008, at approximately 8 p.m. Eastern Daylight Time, and took action, among other things, to approve a resolution authorizing LBHI to commence a chapter 11 proceeding.

24.    Section 6(a) of the Master Agreement provides that:  "If [ ] 'Automatic Early Termination' is specified in the Schedule as applying to a party, then an Early Termination Date in respect of all outstanding Transactions will occur immediately upon the occurrence with respect to such party of an Event of Default specified in Section 5(a)(vii)(1), (3), (5), (6) or to the extent analogous thereto (8), and as of the time immediately preceding the institution of the relevant proceeding or the presentation of the relevant petition upon the occurrence with respect to such party of an Event of Default specified in Section 5(a)(vii)(4) [. . . .]"

25.    The parties to each Master Agreement also agreed that payments due and owed under the Master Agreement on early termination would be calculated in accordance with "Market Quotation" and would be measured by "Second Method."  Under this method, if upon the Early Termination the Non-defaulting Party enjoyed a gain on the Terminated Transactions, it would be required to pay the amount of that gain to the Defaulting Party.

26.    Each Nomura Entity also entered into a Credit Support Annex with LBSF (the "CSA"), which supplemented, formed part of and was subject to the Master Agreement.  The CSA detailed each of the parties' rights and obligations in respect of credit support delivered by either party to the other.

27.    Paragraph 10 of each CSA defined "Exposure" as a calculation of amounts that would be owed on an Early Termination:

> "'Exposure' means, with respect to a party on a Valuation Date
> and subject to Paragraph 4 in the case of a dispute, the amount, if
> any, that would be payable to that party by the other party
> (expressed as a positive number) or by that party to the other party
> (expressed as a negative number) pursuant to Section 6(e)(ii)(1) of
> this Agreement if all Transactions (other than the Transaction
> constituted by this Annex) were being terminated as of the relevant
> Valuation Time, on the basis that (i) that party is not the Affected
> Party and (ii) the Base Currency is the Termination Currency:
> *provided* that Market Quotations will be determined by the

Valuation Agent on behalf of that party using its estimates at mid-market of the amounts that would be paid for replacement transactions (as that term is defined in the definition of 'Market Quotation')"

28.    Under each CSA, the parties calculated Exposure on a regular basis over the life of the Swap Agreement.

29.    In the days leading up to September 15, 2008, each Nomura Entity delivered millions of dollars of credit support to LBSF.  This delivery of credit support was an express admission by the Nomura Entities that, as of that time, each of them had calculated that it would owe LBSF at least those sums, "if all Transactions…were being terminated [immediately]."

30.    Despite the Nomura Entities' recognition of their respective Exposure to the Debtors leading up to the Early Termination Date, on September 30, 2008, each Nomura Entity delivered a Calculation Statement to the Debtors.

31.    Each of the Nomura Entities admitted in its September 2008 Calculation Statement that it did not calculate the Settlement Amount in accordance with Market Quotation, but instead reverted to a Loss calculation.

32.    Each Nomura Entity stated that it "sent notices to four Reference Market-makers to obtain Market Quotations for the Terminated Transactions, but no Reference Market-maker was willing to provide any Market Quotation with respect to any of the Transactions."

33.    Each Nomura Entity further admitted that it determined its Loss "by reference to" its "own internal models (which generate a 'mid' value), and by reference to a bid/offer spread."

34.    Each Nomura Entity failed to provide the Debtors with its "internal models" or to explain why it was entitled to take a "bid/offer spread" at all, let alone in the commercially unreasonable manner it did so, to calculate its Loss under Section 14 of the Master Agreement.

35.     Finally, each Nomura Entity in its September 2008 Calculation Statement claimed that it was the *Debtors* that owed the *Nomura* Entity millions of dollars—and not the other way around.  The calculations by the Nomura Entities, as reflected in their respective September 2008 Calculation Statements, each resulted in a swing in the valuation of the Transactions of tens or hundreds of millions of dollars in favor of the Nomura Entities.

## II.     Each Nomura Entity Calculated The Settlement Amount Applying The Same Flawed Calculation Methodology

36.     The swings in valuation worth tens or in some cases hundreds of millions of dollars in favor of the Nomura Entities arose from a set of systemic problems with the Claims, including each Nomura Entity's failure to properly value offsetting mirror Transactions.  For example, each Nomura Entity acknowledged in its Calculation Statement, which was the basis of its claims submitted under oath to this Court, that it had determined its Loss by using its "internal models" to derive a value for each of the thousands of individual Transactions, and then applying a "bid/offer spread" to each one.  Many of these Transactions, however, were either mirror image interest rate swap Transactions in which the Nomura Entity and LBSF swapped cash flows related to identical pairs of interest rates under identical conditions, or were credit derivative Transactions and represented both the purchase of credit protection and the sale of credit protection against the same underlying reference obligations with identical maturity dates and effective dates.  There was little or no net risk to the Nomura Entities or LBSF on collections of such offsetting Transactions between themselves.  By applying deflated bid prices and inflated offer prices, each Nomura Entity generated hundreds of millions of dollars of "Loss" without actually suffering any loss at all because these positions, when viewed together, posed minimal, if any, economic risk.

37.     By way of illustration, set forth below is an analysis from Nomura's submissions of 23 separate Credit Derivative Transactions, concerning a particular index as the reference obligation – Markit CDX North America Investment Grade Index, Series 5, 5 Year maturity ("CDX IG CDSI S5 5Y").  With respect to this index, Nomura sold credit protection to LBSF in 13 separate Transactions each with the same Effective Date of September 21, 2005, the same Maturity Date of December 20, 2010 and the same coupon.  The total notional amount of these 13 Transactions was $1.54975 billion.  With respect to exactly the same index, LBSF sold credit protection to Nomura in 10 other transactions, also each with an Effective Date of September 21, 2005 and a Maturity Date of December 20, 2010.  The total notional amount of these 10 Transactions was $1.5355 billion.  These 23 transactions, although they represent gross notional amounts of over $3 billion, presented a smaller economic risk, that is, on a net basis these 23 Transaction were economically equivalent to a single transaction in which Nomura sold credit protection to LBSF on the CDX IG CDSI S5 5Y index on a notional amount of $14.25 million, with an Effective Date of September 21, 2005 and a Maturity Date of December 20, 2010.  The 23 transactions discussed above are graphically illustrated as follows:



38.     Using the above 23 transactions as an example, an analysis of Nomura's valuation is revealing.  Instead of valuing the net economic exposure of these Transactions, Nomura has inflated and exaggerated the economic risk by applying broadly divergent bid prices and offer prices for these otherwise identical and offsetting transactions.  By doing so, Nomura was able to generate a Settlement Amount valuation for these 23 Transactions in the amount of $2.479 million owed by LBSF to Nomura.  Nomura offered no insight or explanation into its pricing or methodology let alone an explanation or justification for why it derived and employed multiple bid prices and multiple offer prices.  The net effect of Nomura's methodology is described below.  In sharp contrast to Nomura's skewed valuation, a proper economic analysis, using

Nomura's own prices, would yield a settlement amount value for these Transactions of approximately $589,736 owed by Nomura to LBSF.[13]



39.     Nomura Securities performed the same manipulation in valuing its credit derivative Transactions with LBSF.  For instance, Nomura Securities entered into a set of 17 separate Credit Derivative Transactions, concerning a particular index as the reference

---

[13]     Based on the prices Nomura quoted in its September 2008 Calculation Statement, and applying the price most favorable to Nomura on the net Exposure, the result of this analysis is still one in which Nomura would owe money to LBSF.  Because Nomura has not divulged its internal models and pricing methodology, Debtors cannot evaluate the validity of any Nomura price, and reserves all of its rights to contest and challenge the prices actually used.

10-03228-scc    Doc 2    Filed 04/23/10    Entered 04/23/10 12:35:50    Main Document
Pg 22 of 37

obligation—Markit iTraxx Japan Index, Series 8, 5 Year Maturity ("<u>ITRX JAPAN CDSI S8</u> <u>5Y</u>").  With respect to this index, Nomura Securities sold credit protection to LBSF in 8 separate Transactions each with an Effective Date of September 20, 2007 and a Maturity Date of December 20, 2012.  The total notional amount of these 8 Transactions was approximately USD 149.16 million.  With respect to exactly the same index, LBSF sold credit protection to Nomura Securities in 9 other transactions, with the same Effective Date of September 20, 2007 and the same Maturity Date of December 20, 2012.  The total notional amount of these 9 Transactions was approximately USD 111.87 million.  These 17 Transactions, although they represent gross notional amounts of over USD 261 million, presented a smaller economic risk, that is, on a net basis these 17 Transactions were economically equivalent to a single Transaction in which Nomura Securities sold credit protection to LBSF on the ITRX JAPAN CDSI S8 5Y index on a notional amount of approximately USD 37.29 million, with an Effective Date of September 20, 2007 and a Maturity Date of December 20, 2012.  The 17 transactions discussed above are graphically illustrated as follows:



40.     Using the above 17 transactions as an example, an analysis of Nomura Securities'

valuation is revealing.  Instead of valuing the net economic exposure of these Transactions,

Nomura Securities has inflated and exaggerated the economic risk by applying broadly divergent

bid prices and offer prices for these otherwise identical and offsetting transactions.  By doing so,

Nomura Securities was able to generate a Settlement Amount valuation for these 17 Transactions

in the amount of $1.51 million owed by Nomura Securities to LBSF.  Nomura Securities offered

no insight or explanation into its pricing or methodology.  The net effect of Nomura Securities'

methodology is described below.  In sharp contrast to Nomura Securities skewed valuation, a

proper economic analysis, using Nomura Securities' own prices, would yield a Settlement

Amount value for these Transactions of approximately $1.95 million owed by Nomura Securities

to LBSF.[14]



41.      The Nomura Entities' Loss exaggerations are not confined to credit derivatives

Transactions but also extend to interest rate Transactions.  For example Nomura Securities and

LBSF entered into several pairs of Japanese Yen-denominated (JPY) floating interest rate swaps

in which one party made periodic fixed interest rate payments and the other made periodic

floating interest rate payments.  In one Transaction, Nomura Securities agreed to pay LBSF

---

[14]      This valuation is based on applying Nomura Securities own bid price.  Because Nomura Securities has not
divulged its internal models and pricing methodology, the Debtors cannot evaluate the validity of any
Nomura Securities price, and reserves all of their rights to contest and challenge the prices actually used.

periodic floating rate payments based on six-month LIBOR[15] and LBSF agreed to pay Nomura

Securities periodic payments based on a fixed interest rate of 1.0175%.  In the other Transaction,

LBSF agreed to pay Nomura Securities periodic floating payments of six-month LIBOR and

Nomura Securities agreed to pay LBSF periodic fixed interest rate payments of 1.0775%.  Both

Transactions had the same JPY 100 billion notional amount, the same Maturity Date and were

effective on the Early Termination Date.  As a consequence of entering into this pair of offsetting

Transactions, as of the Early Termination Date, Nomura Securities and LBSF were exposed to

little, if any, interest rate risk.  The floating components of these two Transactions effectively

negated one another and the net economic exposure was a fixed amount—determined simply by

comparing the difference between the two fixed rates:  1.0175% versus 1.0775%; that is a

difference of only 0.06%.

42.     Using this pair of Transactions as an example, an analysis of Nomura Securities'

valuation is revealing.  Instead of simply using the fixed and pre-determined value of this pair of

offsetting Transactions that posed little or no economic risk, Nomura Securities inflated and

exaggerated the economic risk by applying a divergent bid price and offer price for these

otherwise overlapping and offsetting positions.

43.     Similarly, Nomura GFP and LBSF entered into several pairs of interest rate swaps

in which one party made periodic fixed interest rate payments and the other made periodic

floating rate payments.  In one Transaction, Nomura GFP agreed to pay LBSF periodic floating

rate payments based on the three-month LIBOR and LBSF agreed to pay Nomura GFP periodic

payments based on a fixed interest rate of 4.85%.  In the other Transaction, LBSF agreed to pay

Nomura GFP periodic floating payments of three-month LIBOR and Nomura GFP agreed to pay

---

[15]     LIBOR is the London Interbank Offer Rate and the most widely used reference rate for short term interest
rates.  Six-month LIBOR is the rate on an Interbank loan with a six month maturity.

LBSF periodic fixed rate payments of 4.7798%. Both Transactions had the same $50 million notional amount, the same Effective Date and the same Maturity Date. As a consequence of entering into this pair of offsetting Transactions, Nomura GFP and LBSF were exposed to little, if any, interest rate risk. The floating components of these two Transactions effectively negated one another and the net economic exposure was a fixed amount—determined simply by comparing the difference between the two fixed rates: 4.85% versus 4.7798%; that is a difference of only 0.0702%.

44.     An analysis of Nomura GFP's valuation reveals the same phenomenon as in the other examples. Instead of simply using the fixed value of this pair of offsetting Transactions that posed little or no economic risk to Nomura GFP, Nomura GFP inflated and exaggerated the economic risk by applying a broadly divergent bid price and offer price for these otherwise overlapping and offsetting positions. As a result, Nomura GFP calculated a combined value of $337,926 payable to Nomura GFP for this pair of Transactions that posed no economic risk to Nomura GFP.

45.     Moreover, upon information and belief, the Nomura Entities' respective valuations do not reflect their respective actual gains or losses in connection with the terminated Transactions because the Nomura Entities would not have managed their interest rate risk on a Transaction by Transaction basis, but instead by employing other risk management and risk mitigation techniques. Thus, the Nomura Entities' approach to valuing their respective purported Loss on a Transaction by Transaction basis and by applying a "bid/offer spread," bears no relationship to the commercial reality and is therefore commercially unreasonable.

46.     These are not isolated examples but instead reflect the *modus operandi* of the Nomura Entities, that is, to inflate the amounts payable from LBSF to the Nomura Entities and to

deflate the amounts the Nomura Entities owed LBSF.  Each Nomura Entity repeated this methodology with hundreds of offsetting Transactions, leading to a massive increase in the Claims.

47.     Indeed, there is no indication in Nomura or Nomura Securities' submissions that such entities incurred any actual losses or damages at all as a result of the Early Termination. Similarly, while Nomura GFP may ultimately be entitled to a claim against the Debtors, any actual losses or damages indicated in its submissions are a fraction of the claims asserted by Nomura GFP.

### III.  The Nomura Entities' Valuations Are Not Only Contrary To The Swap Agreement Commercial Practice, But May Also Violate Section 562 of the Bankruptcy Code

48.     In addition to flouting applicable law and the plain language of the Swap Agreements, which require the Nomura Entities to calculate their damages in a commercially reasonable manner, a standard consistent with, if not confirmed by, section 562 of the Bankruptcy Code, the Nomura Entities may have also failed to comply with section 562 with respect to the timing of the calculation of the Settlement Amounts included in their respective Claims.

49.     Section 562 of the Bankruptcy Code provides: "[i]f the trustee rejects a swap agreement [. . .] pursuant to section 365(a), or if a [. . .] swap participant liquidates, terminates, or accelerates such contract or agreement, damages shall be measured as of the earlier of—(1) the date of such rejection; or (2) the date or dates of such liquidation, termination, or acceleration.  (b) If there are not any commercially reasonable determinants of value as of any date referred to in paragraph (1) or (2) of subsection (a), damages shall be measured as of the earliest subsequent date or dates on which there are commercially reasonable determinants of value."  11 U.S.C. § 562(a) and (b).

50.     Nomura GFP purported to calculate its Loss as of September 15, 2008, but
Nomura Securities and Nomura purported to calculate their respective Loss as of September 16,
2008, and then, in its February 2009 Calculation Statement, Nomura purported to recalculate its
original Loss calculation as it related to ten Icelandic Bank Transactions, based on events that
occurred after the termination.  Each Nomura Entity bears the burden of proving that it has
complied with section 562 with respect to the timing of the calculation of its Settlement Amount.
As a result, issues relating to the timing of the calculation of the Settlement Amounts by the
Nomura Entities will be common across the Nomura Proceedings, and in the interest of
efficiency and fairness, the Nomura Proceedings should be heard together.

## IV.     The Nomura Entities Are Not Entitled To Unmatured Default Interest Or Legal Fees

51.     Each of the Claims also includes (a) alleged default interest accruing through
either August 31, 2009 or September 18, 2009, and (b) alleged expenses incurred in connection
with the enforcement of the Swap Agreement.  Neither the claims for interest, nor the attorney's
fees are proper.

52.     As a threshold matter, because Nomura and Nomura Securities are not entitled to
a Settlement Amount under the Swap Agreements, they are also not entitled to default interest or
expenses associated with the enforcement of its non-existent right to collect amounts from LBHI.
Furthermore, even if LBHI owed Nomura or Nomura Securities amounts under the Swap
Agreement, which it does not, neither Entity would be entitled to default interest or expenses.
Like Nomura GFP, Nomura and Nomura Securities each admitted in its Claims that the claimed
attorney's fees cover work done not only on its behalf, but also on behalf of the other Nomura
Entities.  There was no provision in the Swap Agreements that permitted any Nomura Entity to

seek the payment of legal fees incurred by related entities, in pursuit of payment under agreements other than the Swap Agreement that is the basis for the particular Nomura Claim.

53.      Even distributed among the three Nomura Entities, the fees claimed were unreasonably high and unjustifiable under the circumstances.  Both under the Swap Agreements and as a matter of equity, the Nomura Entities should not be able to place the burden of their unreasonableness on other creditors of the Debtors' estates.

54.      Further, the Default Interest was largely, if not entirely, unmatured on the date when the Debtors filed for bankruptcy, and therefore not rightly included in a proof of claim. The Claims sought interest accruing through August 31, 2009, with respect to Nomura Securities, and September 18, 2009, with respect to Nomura and Nomura GFP.  Substantially all of the claimed interest would have accrued post-petition.

55.      Accordingly, for the reasons discussed above, the Debtors respectfully seek consolidation of the Nomura Proceedings.

## NOTICE

56.     No trustee has been appointed in these chapter 11 cases.  Notice of this

Motion has been provided to (i) counsel for the Nomura Entities; (ii) the U.S. Trustee; (iii) the

attorneys for the Creditors' Committee; (iv) the Securities and Exchange Commission; (v) the

Internal Revenue Service; and (vi) the United States Attorney for the Southern District of New

York, in accordance with the Amended Order Pursuant to Section 105(a) of the Bankruptcy

Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case

Management Procedures, dated February 13, 2009 [Docket No. 2837] (the "Case Management

Order").  The Debtors submit that such notice is sufficient and no other or further notice need be

provided.

WHEREFORE, the Debtors respectfully request that this Court: (i) enter an order

substantially in the form attached hereto as Exhibit A, granting the relief sought herein; and

(ii) grant such other and further relief to the Debtors as the Court may deem proper.


Dated: April 23, 2010
       New York, New York

                                        ___/s/ Jayant Tambe_____
                                        Corinne Ball
                                        Jayant W. Tambe
                                        Aviva Warter Sisitsky
                                        JONES DAY
                                        222 East 41st Street
                                        New York, New York 10017
                                        Telephone:  (212) 326-3939
                                        Facsimile:  (212) 755-7306

                                        *Attorneys for the Debtors and
                                        Debtors in Possession*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re:                                                      :     Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :     Case No. 08-13555 (JMP)
:
Debtors.                                          :     (Jointly Administered)
:
---------------------------------------------------------------x
:
LEHMAN BROTHERS HOLDINGS INC. and     :
LEHMAN BROTHERS SPECIAL                       :
FINANCING, INC.                                        :     Adv. Proc. No. 10-03228-jmp
:
Plaintiffs,                                     :
:
-against-                                      :
:
NOMURA INTERNATIONAL PLC,                   :
:
Defendant.                               :
---------------------------------------------------------------x
:
LEHMAN BROTHERS HOLDINGS INC. and     :
LEHMAN BROTHERS SPECIAL                       :
FINANCING, INC.                                        :     Adv. Proc. No. 10-03229-jmp
:
Plaintiffs,                                     :
:
-against-                                      :
:
NOMURA SECURITIES CO. LTD.                    :
:
Defendant.                               :
---------------------------------------------------------------x

**ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULES 1001, 7042 AND 9014, TO CONSOLIDATE**
**CERTAIN PROCEEDINGS AND ESTABLISH RELATED PROCEDURES**

Upon the Motion of Debtors and Debtors in Possession for Entry of an Order,

Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 1001, 7042 and 9014, to

Consolidate Certain Proceedings and Establish Related Procedures (the "Motion"); and the Court

having reviewed the Motion and having considered the statements of counsel before the Court at

a hearing (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to

Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July

19, 1984 (Ward, Acting C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c)

venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due and proper notice of the

Motion was provided under the circumstances and that no other or further notice need be

provided; and the Court having determined that the relief sought in the Motion is in the best

interest of the Debtors, its creditors, the Nomura Entities and all parties in interest and will

promote judicial economy, that the Nomura Proceedings involve common questions of law and

fact, and that the legal and factual bases set forth in the Motion and at the Hearing establish just

cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED in its entirety.

2.      The Nomura Proceedings are hereby consolidated by the Court.

3.      All documents filed in connection with any of the Nomura Proceedings

shall be filed only on the docket of the main chapter 11 case, In re Lehman Brothers Holdings

Inc., et al., Case No. 08-13855 (JMP).

4.      All documents filed in connection with any of the Nomura Proceedings

shall be captioned as set forth on Annex A hereto.

5.      All hearings (whether evidentiary or non-evidentiary), trials and

conferences (whether pre-trial or otherwise) held with respect to any Nomura Proceeding shall

be treated as a joint hearing, trial or conference on all Nomura Proceedings.

6.      The Nomura Proceedings shall be exempt from the Order Pursuant to
Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390
Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute
Resolution Procedures for Claims Against Debtors [Docket No. 8474].

7.      Notwithstanding that the Nomura GFP Proceeding is a contested matter,
and notwithstanding that the Nomura International Proceeding and the Nomura Securities
Proceeding contain contested matters, both the Debtors and the Nomura Entities shall serve all
documents filed in the Nomura Proceedings in a manner consistent with the timelines, applicable
rules and procedures governing adversary proceedings.

8.      Consistent with the requirements of Bankruptcy Rules 7016, 7026(f) and
9014, the Debtors and the Nomura Entities are hereby directed to confer, as soon as practicable,
with respect to the submission of a jointly-proposed scheduling order and discovery plan with
respect to the Nomura Proceedings, which will facilitate the consolidation of the Nomura
Proceedings.

9.      Nothing contained in this Order shall be construed to alter the applicable
burdens of proof in any of the Nomura Proceedings or the Debtors' or the Nomura Entities'
substantive rights in any way.

10.     This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation and/or interpretation of this Order.


Dated: New York, New York
_____ __, 20__


_____
UNITED STATES BANKRUPTCY JUDGE

**<u>ANNEX A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                     :
In re:                                               :          Chapter 11
                                                     :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,             :          Case No. 08-13555 (JMP)
                                                     :
            Debtors.                                 :          (Jointly Administered)
                                                     :
----------------------------------------------------------------x
                                                     :
LEHMAN BROTHERS HOLDINGS INC. and                    :
LEHMAN BROTHERS SPECIAL                              :
FINANCING, INC.                                      :          Adv. Proc. No. 10-03228-jmp
                                                     :
            Plaintiffs,                              :
                                                     :
      -against-                                      :
                                                     :
NOMURA INTERNATIONAL PLC,                            :
                                                     :
                  Defendant.                         :
----------------------------------------------------------------x
                                                     :
LEHMAN BROTHERS HOLDINGS INC. and                    :
LEHMAN BROTHERS SPECIAL                              :
FINANCING, INC.                                      :          Adv. Proc. No. 10-03229-jmp
                                                     :
            Plaintiffs,                              :
                                                     :
      -against-                                      :
                                                     :
NOMURA SECURITIES CO. LTD.                           :
                                                     :
                  Defendant.                         :
----------------------------------------------------------------x